## APPEAL OF JOHN A. CAVANAGH.

Docket No. 2916.   Submitted June 3, 1925.   Decided July 10, 1925.

The estimated amount of a contingent liability is not an allowable deduction from taxpayer's gross income for the year in which it was incurred.

*Lawrence A. Baker, Esq.*, and *Thomas R. Rutter, Esq.*, for the taxpayer.
*M. N. Fisher, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

This appeal is from a determination by the Commissioner of additional income and profits taxes for the calendar year 1919, in the amount of $59,650.05, all of which is in controversy. The deficiency results from the disallowance of certain deductions from gross in-

come taken by the taxpayer for the year in question as ordinary and necessary business expenses. From the oral and documentary evidence and the allegations of the petition admitted by the Commissioner, the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is an individual now residing in New York, but, during the year involved in this appeal, he was a resident of Des Moines, Iowa, where he was engaged in the business of banking. He kept his books on the cash receipts and disbursements basis.

2. Some time during the year 1919 the taxpayer entered into a contract with the Des Moines Waterworks Co. by which he acquired the right to sell its property located in Des Moines, Iowa, at a figure which was to be net to such company. Thereafter, through the efforts of the taxpayer, the said property was sold to the City of Des Moines for a price $250,000 in excess of the net amount stipulated by the company.

3. The purchase of the waterworks property by the City of Des Moines could not be effected without the approval of the electors of such city, expressed in a special election. Such an election was, called and held at a date within the year 1919. For the purpose of securing favorable action by the voters, the taxpayer spent the amount of $60,662.05 prior to such special election for advertising, the holding of public meetings, and other campaign expenses. Included in the amount so spent was a payment to the resident attorney of the Des Moines Waterworks Co. in the amount of $25,000 for reasons, purposes, and uses not disclosed by the evidence offered at the hearing of this appeal.

4. During the year 1919, and for many years theretofore, Charles S. Denman, the father-in-law of the taxpayer, was local manager for the company that owned the Des Moines waterworks, and was in receipt of an annual salary of $8,000 for his services. Denman feared that the purchase of the waterworks property by the city would deprive him of his position as manager, and often discussed his possible loss of employment with his son-in-law, the taxpayer. As a result of such discussions the taxpayer entered into an agreement with Denman under the terms of which, in the event of the purchase of the waterworks property by the city, he agreed to pay Denman the amount of $8,000 per year for the remainder of his life. During the campaign for the approval of the contemplated purchase by the voters of the city, Denman received the amount of $25,000 from the waterworks company for some consideration not disclosed at the hearing of this appeal.

5. At the special election held for that purpose, the voters of Des Moines approved the proposed purchase of the waterworks property by the city. The transaction was then completed, and under the terms of his contract with the waterworks company the taxpayer received the amount of $250,000 for his services in connection with the deal.

6. The individual income-tax return filed by the taxpayer for the calendar year 1919 disclosed gross income in the amount of $281,- 138.36, with deductions which reduced net taxable income to the amount of $161,007.04. Among the deductions taken was an amount of $102,798.36 as bad debts and other deductions. On final audit of the taxpayer's income-tax return for 1919, among other adjustments, the Commissioner disallowed any deduction of the estimated cost of the Denman annuity as an ordinary and necessary business expense for the year in question, and determined additional tax liability in the amount of $59,650.05, and so notified the taxpayer by registered letter mailed on February 25, 1925. From such determination this appeal was taken on March 30, 1925.

DECISION.

The determination of the Commissioner is approved.

OPINION.

LANSDON: The only issue involved in this appeal is whether the Commissioner erroneously disallowed certain amounts deducted by the taxpayer from his gross income for the year 1919 as ordinary and necessary expenses, which were (1) an amount of $96,308, representing the actuarial value of an annuity to Denman of $8,000 for the remainder of his life, and (2) an amount of $60,662.05, alleged to have been paid out as expenses in connection with the special election in which the voters of Des Moines approved the purchase of the Des Moines waterworks properties by the government of such city.

The taxpayer asserts that within the year 1919 he entered into an oral agreement with Denman in which he obligated himself to pay Denman the amount of $8,000 for the remainder of his life. This agreement had two purposes: (1) To safeguard Denman against any loss of income that might result to him from the municipalization of the privately owned waterworks property of which he was manager, and (2) to secure his assistance and cooperation in effecting the proposed sale of the waterworks plant to the city. The taxpayer now contends that his agreement with Denman was an

oral declaration of trust, and that when he received the fee of $250,000 there was included in it the amount of $96,308, which he could take only as trustee for Denman, and that his gross income for 1919 should be reduced by that amount in the correct computation of his income-tax liability.

While a trust in personal property may be created by oral agreement, there must be no elements of doubt or uncertainty concerning either the existence or the terms of such a declaration.

The certainty in a declaration of trust which is necessary and sufficient to create a trust has been construed to mean clear, explicit, definite, and unequivocal expressions setting out the trust with such certainty that a court of equity may force its execution; and the element of certainty is especially necessary where the declaration of trust rests in parol. 39 Cyc. 58. (Citing cases.)

There are several uncertainties in the so-called trust agreement. One is whether it was the intention of the parties that the taxpayer was obligated to pay the specified annuity only in the event that Denman lost his employment and was deprived of the salary he was then receiving as manager. Another uncertainty was in the total amount of the obligation incurred. The taxpayer now proposes to base this amount on an actuarial formula, but there is no evidence that this method of determination is anything more than a mere afterthought pleaded years after the agreement was made. There is no reason to believe that the separation of $96,308 from the body of the commission and the purchase of an annuity for Denman with that amount was ever contemplated.

Even if the agreement was in the terms alleged by the taxpayer, there is serious doubt as to whether a trust was in fact created thereby. It has all the earmarks of a contract to pay a definite amount annually, but an indefinite total amount in the future contingent upon the life of Denman. Default in such an obligation would result in a debt measured by the amount of the defaulted payment or payments, and not in the accrual of the entire contingent obligation. There is nothing in the agreement that requires the taxpayer to hold any specific amount in trust to secure the payments promised to Denman. In the light of the evidence and on authority of the legal principles cited, the Board holds that the agreement between the taxpayer and Denman is not a declaration of trust.

The taxpayer alleges that his agreement to pay Denman $8,000 per year was unconditional and that, subsequent to the year 1919, he had completely discharged that obligation by the payment of $8,000 in cash and the transfer to Denman of real estate in the City of Des Moines of a value in excess of $80,000. All this may be true without in any way affecting the tax liability of the taxpayer for the year

1919. The taxpayer's income-tax return for the year in question shows on its face that the appellant kept his books on a cash receipts and disbursements basis. Even if an obligation was incurred in 1919 no part of it was paid in that year. The Board holds that a contingent future liability of the taxpayer on a cash receipts and disbursements basis is not deductible from gross income, except as obligations thereunder are actually paid. No payments were made nor were any funds segregated from the taxpayer's income to provide for future payments under the alleged contract during the year involved in this appeal.

The taxpayer submitted no books of account, canceled vouchers, or other evidence of the amounts of expense incurred by him in the campaign to secure the approval of the proposed sale of the waterworks company to the City of Des Moines. Doubtless such payments were made, but the Board is unable to ascertain either the amounts, the deductibility, or the business necessity of such alleged disbursements, and therefore refuses to disturb the determination of the Commissioner.